IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WALTER DUANE WHITE,**

      **Plaintiff,**

**v.**                                                     **Civil action no. 3:07cv23**
                                                        **(Judge Bailey)**

**UNITED STATES OF AMERICA,**
**DEPARTMENT OF JUSTICE,**
**FEDERAL BUREAU OF PRISONS,**
**FEDERAL CORRECTIONAL INSTITUTION GILMER,**
**WARDEN JOYCE FRANCIS,**
**INMATE SYSTEMS MGT DUANE BROWN,**
**FCI GILMER'S MAIL ROOM STAFF.**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On February 20, 2007, the Plaintiff, initiated this case by filing a civil rights complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On March 1, 2007, the Plaintiff was granted leave to proceed *in forma pauperis*. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, <u>et</u> <u>seq</u>., and 28 U.S.C. §§ 1915(e) and 1915(A).

### II. Plaintiff'S CLAIMS

In his complaint, the Plaintiff alleges sometime after August 18, 2006, he received a letter from Jay Rockefeller, United States Senator. The Plaintiff alleges the letter was delivered to FCI Gilmer and opened outside his presence. The Plaintiff alleges that by opening the letter outside his presence, the

mail room staff knowingly violated Institutional Supplement 5800.10. As relief, the Plaintiff requests $250,000 "in equity" for the violation of his Due Process Rights. In addition, he requests that this wide spread custom cease and desist.

### III. ANALYSIS

**A. Exhaustion**

A Bivens action, like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle, 534 U.S. 516 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, supra at 517. Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is unavailable. Booth, supra at 741.

The Fourth Circuit has determined that the PLRA does not require a prisoner to allege that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). The Fourth Circuit further found that exhaustion is an affirmative defense, but that a district court may dismiss the complaint where the failure to exhaust is apparent from the face of the complaint or that the court may inquire "on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file

2

a written complaint with the warden (BP-9), followed by an appeal to the regional director of the Federal Bureau of Prisons (BP-10). Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11). 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

Although the Plaintiff alleges that he has exhausted his administrative remedies, it is apparent from reviewing the materials submitted by the Plaintiff that he did complete the exhaustion process until after he filed his complaint. Specifically, the undersigned notes that the Plaintiff filed his Central Office Administrative Remedy Appeal on February 1, 2007, which was received on February 5, 2007. The appeal was rejected because the Plaintiff did not provide a copy of his Regional Office Administrative Appeal (BP-10) and a copy of the BP-10 response from the Regional Director. However, the Plaintiff was given fifteen days from the date of the rejection notice, which was February 6, 2007, to resubmit his appeal. On February 20, 2007, the Plaintiff filed his pending complaint with this Court. The Plaintiff, thereafter, refiled his appeal, which was ultimately rejected by the Administrator of the National Inmate Appeals on April 20, 2007. Therefore, as evidenced by the documentation provided by the Plaintiff, he did not exhaust his administrative remedies prior to filing the instant action. However, exhaustion must be completed before the action is filed. See 42 U.S.C. § 1997e(a); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).[1] Consequently, the Plaintiff's complaint should be dismissed because he failed to exhaust his

---

[1]The first circuit noted the following circuits had ruled on the issue of whether exhaustion could be completed during the pendency of the civil action:
   Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001)("[A]llowing prisoner suits to proceed, so lo as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C. Cir. 2001) (Rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative

administrative remedies prior to filing the instant action. However, even if the Court were to find that Plaintiff may exhaust his administrative remedies during the pendency of his complaint, as discussed in he following sections, the complaint should still be dismissed.

**B. Defendants: United States of America, Department of Justice, Federal Correctional Institution Gilmer**

A Bivens cause of action is only available against federal officers in their individual capacities and cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994) (refusing to find a Bivens remedy against a federal agency); see also Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government."). Therefore, the United States of America, Department of Justice, Federal Bureau of Prisons, and FCI Gilmer cannot be sued by the Plaintiff in a Bivens action.

**C. Joyce Francis, Warden**

Liability in a Bivens case is "personal, based upon each defendant' own constitutional violations." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation

---

remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Miller v. Tanner, 196 F.3d 1190, 1193 (11th cir. 1999) ("An inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."). But see Williams v. Norris, 176 F.3d 1089, 1090 (8th Cir. 1999) (per curiam) (reversing district court's dismissal for failure to exhaust where "the record demonstrated that [Plaintiff's] grievance had been denied...at the time the court ruled").
Medina-Claudio v. Rodriquez-Mateo, 292 F.2d 31, 36 (1st Cir. 2002).

omitted). Thus, in order to establish liability in a <u>Bivens</u> case, the Plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See <u>Zatler v. Wainbright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u> 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of Defendant Francis. Instead, it appears that Plaintiff has named this Defendant only in his official capacities as the Warden. However, a suit against government agents acting in their <u>official</u> capacities is considered a suit against the United States itself. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under <u>Bivens</u> is not available against the defendant in his official capacity.

## C. Inmate Systems Mgmt Duane Brown and FCI Gilmer's Mail Room Staff

The Plaintiff alleges that these defendants have violated his right to due process by mismanagement of his mail. The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend.. V; <u>U.S. v. Salerno</u>, 481 U.S. 739, 746 (1987). There are no exact standards to determine what behavior is limited by substantive due process. <u>Rochin v. California</u>, 342 U.S. 165, 173 (1952). However, the theory of substantive due process is "reserved for truly egregious and extraordinary cases." <u>Myers v. Scott County</u>, 868 F.2d 1017, 1918 (8th Cir. 1989).

5

Federal regulations divide incoming prison mail into two categories: general and special. General mail is subject to being opened and inspected by prison officials. In addition, incoming general mail may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate. 28 C.F.R. § 540.14 (1997). Special mail refers to certain written communications from attorneys, courts, congressman and other public officials. It enjoys more protection than general mail in that it cannot be read by prison officials and can be opened to check for contraband only in the presence of the prisoner to whom it is addressed. 20 C.F.R. § 540.18. Correspondence qualifies as special mail only "if the sender is adequately identified on the envelope, and the front of the envelope is marked 'Special mail'–Open only in the presence of the inmate". Id.

In 1999, the Bureau of Prisons issued a Program Statement regarding handling of special mail. Although the regulations themselves remained unchanged, the BOP adopted a new procedure in implementing them: mail from the chambers of a Federal judge or from a member of the U.S. Congress should be given special handling even though it does not contain a special mail marking on the envelope. Program Statement 5265.11, p. 16.

Therefore, it would appear that the mail room staff violated this Program Statement when they opened the Plaintiff's letter from Senator John D. Rockefeller outside the Plaintiff's presence. However, the Plaintiff has not provided any allegation that the opening of the letter from Senator Rockefeller was anything other than an isolated mistake. See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (The opening of one piece of an inmate's constitutionally protected mail was an isolated incident and 'without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts [did] not give rise to a constitutional violation")

and Hanston v. Galetka, 799 F.Supp. 1129, 1132 (D.Utah 1992) ("in the absence of any 'pattern' of improper behavior by the defendants, a constitutional violation as addressed in Maschner requires [a showing of] improper motive by the defendants...or access to the courts"). In fact, the Plaintiff submitted an attachment which demonstrates that staff handles a letter from Senator Robert D. Byrd according to the directives of the Program Statement.

Furthermore, the opening of the letter outside the Plaintiff's presence is not a violation of a fundamental right, nor is it conduct so outrageous that it shocks the conscience. It simply is not the type of truly egregious conduct substantive due process was reserved for. Accordingly, the Plaintiff has failed to state a claim against Brown or the mail staff.

## IV.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that: (1) the Plaintiff's Bivens complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro*

*se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Dated: October 16, 2007

                                                 /s/ James E. Seibert
                                                 JAMES E. SEIBERT
                                                 UNITED STATES MAGISTRATE JUDGE